Alexander T. Compton, Appellant, *v.* The Chelsea, Respondent.

Defendant is a corporation organized under the act of 1881 (Chap. 589, Laws of 1881), for the purpose of erecting an apartment house. In the prospectus issued for the purpose of inviting subscriptions for the stock, it was stated that a subscription for seventy shares would entitle the subscriber to certain apartments without additional rent. By the by-laws adopted by the corporation, it was provided that "all questions ＊ ＊ ＊ as to how and to whom and at what rent the several apartments shall be leased, and as to the apportioning and distributing of the said apartments among the stockholders, shall be decided by the vote of the majority of the stock, and not otherwise." Notwithstanding this, the directors adopted the prospectus, and in pursuance thereof a certain apartment was assigned to C., a subscriber. At a stockholders' meeting thereafter held, at which plaintiff was present as the representative of a stockholder, the by-laws were read and changes were made in the plans greatly increasing the expenditures; plaintiff voted in favor of the change; he subsequently purchased C.'s stock and took possession of the apartment assigned to him, which he leased. At a stockholders' meeting held thereafter, but before the stock was transferred to plaintiff on the books of the corporation, it was unanimously resolved that, in view of the increased expenditure, the capital stock should be increased, and that the stockholders should be charged ten per cent on the par of their stock as rent. Upon the transfer of the stock to plaintiff, he received a certificate for his proportion of the new shares, as well as for those purchased; he refused, however, to pay the rent, and when his apartment was vacated by his tenant, the corporation took possession and excluded him therefrom. In an action to recover possession, *held*, that plaintiff took his stock subject to the control of the stockholders as provided in the by-laws; that he had no legal title to the apartment, but simply an equitable right to it upon the conditions imposed by the stockholders' meeting, and by rejecting those conditions he lost that right, and so, had no title upon which he could recover possession.

(Argued October 15, 1891; decided October 27, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 13, 1891, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court and affirmed an order denying a motion for a new trial.

Sickels — Vol. LXXXIII. 　　68

This was an action of ejectment to recover possession of a suite of rooms in an apartment house.

The defendant was organized under what may be called the Apartment House Act (Chap. 589, Laws of 1881). The capital was fixed at $290,000, the number of shares of stock was 5,800, the par value of the shares $50 each.

Before the organization of the company a prospectus was issued, setting forth what it was proposed to do and the advantages which would result from subscriptions, and showing by what investments apartments might be secured. The circular stated that the holding of seventy shares of the stock would entitle the owner to a virtually perpetual lease of an apartment. Subscriptions were made, and opposite the subscriptions were placed the numbers designating the apartments which the subscribers selected. Among other subscribers was a subscription for seventy shares in the name of A. B. Cruikshank, and opposite to which was mentioned the apartment in question. By arrangement between the parties in January, 1883, a certificate for said seventy shares was issued to Thomas C. Van Brunt. In October, 1882, at a meeting of the trustees, by-laws were adopted by which it was provided that all questions as to the purchasing of land, the character and style of buildings to be erected, and as to how and to whom and at what rent the several apartments should be leased, and as to the apportionment and distribution of the apartments among the stockholders should be decided by a vote of a majority of the stockholders, and not otherwise. At the same time and after the adoption of the by-laws, the trustees adopted the prospectus aforesaid as the prospectus of the defendant. On the fourteenth of December, at a meeting of the stockholders, the subscribers were assigned the apartments selected by them ; shares were purchased by plaintiff in January, 1883, but no transfer thereof was made to him on the books of the corporation. The defendant commenced the construction of the house early in 1883. At a meeting of the stockholders held in December, 1882, the plan of the building was changed, whereby the cost was very much increased, and in January, 1884, the capital

stock was increased from $290,000 to $500,000, such additional stock being distributed among the stockholders without anything being paid therefor. On the 23d of January, 1884, the trustees passed a resolution recommending to the stockholders, at a meeting to be called thereafter, that an annual rental equivalent to ten per cent of the face valuation of the stock held by each on the basis of $500,000 be the rental fixed by this company to its stockholders on their respective apartments. On the 29th of January, 1884, and before the distribution of the increased stock, a meeting of the stockholders was held at which more than a majority were present, and unanimously passed resolutions, Van Brunt, the holder upon the books of the company of the seventy shares in question, being present and voting therefor, that an annual rent equivalent to ten per cent of the value of the stock on the basis of an issue of $500,000 should be charged and collected from each stockholder, and that the trustees were authorized to draw up a suitable form of lease to be executed to stockholders upon said basis.

Plaintiff was present at the meeting as the representative of his wife, a stockholder, and voted in favor of the resolution. In June, 1884, the trustees ordered the leases to stockholders to be executed by the president. In September, 1884, the trustees approved and adopted the form of lease. In October, 1884, the building having been completed, the plaintiff obtained the keys of the apartment assigned to him and took possession of his apartments, and expended certain moneys on the completion of the same. On the 1st of December, 1884, the plaintiff rented the premises. On the 11th of May, 1885, the plaintiff surrendered the certificate which he had received from Van Brunt of the seventy shares and received in lieu thereof the original seventy shares and sixty-seven additional shares of the increased stock. In the summer of 1885 a lease of the apartment, duly executed by the president, was tendered to him. He declined not only to accept this but any lease. In October, 1886, the apartments having been vacated by the plaintiff's tenant, the defendant took possession, whereupon the plaintiff brought this action of ejectment.

*A. T. Compton* for appellant. The prospectus, the subscription, the resolution adopting the prospectus and the assignment of the apartments, entitled each stockholder, on payment for his stock, to the apartment subscribed for and assigned to him. (*Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157; *Lorillard* v. *Clyde*, 86 id. 384; 81 id. 468; *Kent* v. *Q. M. Co.*, 78 id. 159; *L. O., etc., R. R. Co.* v. *Mason*, 16 id. 451; *U. H. Co.* v. *Hersee*, 79 id. 455; *Burr* v. *Wilcox*, 22 id. 551.) The plaintiff purchased this stock and the apartment therewith connected from said Van Brunt, and, as assignee, acquired all his rights. (*Sheridan* v. *Mayor, etc.*, 68 N. Y. 30; *Routledge* v. *W. Co.*, 119 id. 592; *Isham* v. *Buckingham*, 49 id. 216; *Jones* v. *T. H. R. R. Co.*, 57 id. 196; *Cutting* v. *Dameral*, 88 id. 410; *Peterson* v. *Mayor, etc.*, 17 id. 449; *Hoag* v. *Lamont*, 60 id. 96, 101; *Blake* v. *Griswold*, 103 id. 429, 434; *Trustees, etc.*, v. *Smith*, 118 id. 634, 641.) No additional instrument was necessary to vest in plaintiff the title to the apartment in question. (*Tuffts* v. *P., etc., Co.*, 96 Mass. 407; *A. Co.* v. *Mayor, etc.*, 55 N. Y. 495; Laws of 1848, chap. 40, § 7; *Burr* v. *Wilcox*, 22 N. Y. 551; *Van Dyck* v. *McQuade*, 86 id. 38; *Beveridge* v. *N. Y. E. R. Co.*, 112 id. 1; *Wood* v. *Fleet*, 36 id. 499; *Taylor* v. *Millard*, 118 id. 244; *Miller* v. *Ball*, 64 id. 286; *J. P. Co.* v. *Chandler*, 91 Mass. 159.) No action was taken by the stockholders or trustees effectual in law to divest plaintiff of his title to this apartment. (*Whittlesey* v. *Franz*, 74 N. Y. 456; *Humphreys* v. *N. Y., L. E. & W. R. R. Co.*, 121 id. 435; *Vail* v. *Hamilton*, 85 id. 453; *Ward* v. *H. R. B. Co.*, 125 id. 230, 235; *Noyes* v. *Anderson*, 124 id. 175; *Coe* v. *Hobby*, 72 id. 141, 146, 147; *Bedford* v. *Terhune*, 30 id. 453, 463; *Chamberlain* v. *Dunlap*, 126 id. 45, 51; Laws of 1848, chap. 40, § 6; 1 Potter on Corp. 125; *In re L. I. R. R. Co.*, 19 Wend. 37; *Halpin* v. *Ins. Co., N. A.*, 120 N. Y. 73, 78; *Wakefield* v. *Fargo*, 90 id. 213.) The by-laws did not authorize the affixing of a rental to the apartments purchased by and apportioned to the stockholders. (Laws of 1848, chap. 40, § 7; Angell & Ames on Corp. [11th ed.] § 333; *Kent* v. *Q. M. Co.*, 78 N. Y. 159.)

Plaintiff was in, and entitled to, the lawful possession of the apartment in question. The eviction was illegal. Ejectment will lie to recover possession. (*Bristor* v. *Burr*, 120 N. Y. 427, 433 ; *In re L. I. R. R. Co.*, 19 Wend. 37; *Dater* v. *T.*, etc., *Co.*, 2 Hill, 629 ; *Leprell* v. *Kleinschmidt*, 112 N. Y. 364 ; Code Civ. Pro. § 3343 ; *Ellicott* v. *Mosier*, 7 N. Y. 201.) The direction of a verdict for defendant was error. (*Bagley* v. *Bowe*, 105 N. Y. 171 ; *Clemence* v. *City of Auburn*, 66 id. 334 ; *Stone* v. *Flower*, 47 id. 556.) The exclusion of the evidence to which plaintiff excepted, of what Mr. Hurbert, the agent of the company in the sale of its stock and a director, told the plaintiff as intended purchaser as to the ownership of the apartment in question was error. (*Beckford* v. *Menier*, 107 N. Y. 490 ; *Leslie* v. *K. Ins. Co.*, 63 id. 27 ; *Chadwick* v. *Farmer*, 69 id. 404 ; *Mayer* v. *Dean*, 15 id. 556.) The admission of the resolutions of the meeting of the stockholders of January 29, 1884, on objection as incompetent and immaterial, was error. (Angell & Ames on Corp. [11th ed.] §§ 489, 492 ; *People* v. *Batchelor*, 22 N. Y. 128 ; *Pearsall* v. *W. U. T. Co.*, 124 id. 256 ; *Rudd* v. *Robinson*, 126 id. 113 ; *Newhall* v. *Appleton*, 124 id. 668.) The admission of the lease on objection and exception as incompetent and immaterial was error. (*Brown* v. *N. Y. C. & H. R. R. R. Co.*, 44 N. Y. 76 ; *P. Bank* v. *S. A. R. C. Church*, 109 id. 512.) The conclusion of the court below that the original contract was modified was error. (Angell & Ames on Corp. [11th ed.] § 233 ; *Moss* v. *Averill*, 10 N. Y. 449 ; *Sheehan* v. *Hamilton*, 4 Abb. Ct. App. Dec. 211; *Phillips* v. *Gorham*, 17 N. Y. 270 ; *Wallace* v. *Walsh*, 125 id. 26 ; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, Id. 263.) Plaintiff's assignor could not, after the sale of the stock, do anything which in law or equity would affect plaintiff's rights. (*Johnson* v. *Underhill*, 52 N. Y. 203 ; *Campbell* v. *A. Z. Co.*, 122 id. 455.) Plaintiff did not ratify, consent or agree to a departure from or modification of the original contract. (*Smith* v. *Kidd*, 68 N. Y. 130, 142 ; *King* v. *Mackellar*, 109 id. 215, 223 ; *Baldwin* v. *Burrows*, 47 id. 199 ;

*Smith* v. *Tracy*, 36 id. 79 ; *Williams* v. *W. U. T. Co.*, 93 id. 162 ; *Paige* v. *Willett*, 38 N. Y. 28, 31 ; *Riggs* v. *C. M. Ins. Co.*, 125 id. 7, 11 ; *Baldwin* v. *Short*, Id. 553, 558 ; Code Civ. Pro. § 500 ; *Linton* v. *U. F. Co.*, 124 N. Y. 533 ; *Swift* v. *S. I. R. T. Co.*, 123 id. 645 ; *Hart* v. *H. R. B. Co.*, 80 id. 622 ; *Hawthorne* v. *Hodges*, 28 id. 486 ; *Brownell* v. *Winne*, 29 id. 400 ; *Goodsell* v. *W. U. T. Co.*, 109 id. 147 ; *Outwater* v. *Moore*, 124 id. 66.)

*William H. Shepard* for respondent. The subscription and prospectus did not confer upon the holder of stock the right to an apartment free of rent. (1 R. S. chap. 18, § 2 ; *L. O. S. R. R. Co.* v. *Curtiss*, 80 N. Y. 219.) The plaintiff, to succeed in this action, must establish a legal title. Proof of an equitable title is not sufficient to support the action of eject- ment. (*Risley* v. *Rice*, 40 Hun, 586 ; *Peck* v. *Newton*, 46 Barb. 173 ; *S. F. M. Co.* v. *Belcher*, 49 Cal. 655 ; *Ecles* v. *Day*, 4 Conn. 96.) The plaintiff being in possession as a mere licensee or tenant at will, could not assign or transfer his possession, and, by underletting the apartment, lost all possession therein, so far as the defendant is concerned, and it had the right to resume possession. (*People* v. *Field*, 1 Lans. 238 ; *Wright* v. *Moore*, 21 Wend. 233 ; *Pierce* v. *Tuttle*, 53 Barb. 166 ; *Rockland* v. *Schanck*, 43 N. Y. 448.) But even if the entry were unlawful, since the defendant has the legal title, it may defend its possession in this action. (*Jackson* v. *Farmer*, 9 Wend. 201.) No error was committed in the exclusion or admission of evidence, and the plaintiff was not prejudiced thereby. (*Olcott* v. *T. R. R. Co.*, 27 N. Y. 546.)

FINCH, J. The decisive inquiry on this appeal is whether the plaintiff was bound by the by-laws of the corporation, and so by the action of the majority of its stockholders.

The " Chelsea " became a corporation and was organized as such under chapter 589 of the Laws of 1881. That act permits any three or more persons to organize themselves into a corporation " for the purpose of purchasing, acquiring, maintaining and improving real estate for residences, homesteads

and apartment houses, to' be leased and conducted by the corporation so formed," and authorizes it to distribute its property and the rents, income and proceeds thereof among its members and stockholders "in such manner as shall be determined by its by-laws." Ordinarily, the business of a corporation is conducted by and placed within the control of its board of directors or trustees, but in the present case an important limitation was attached to their authority by the by-laws which were adopted the day following the formal organization of the company. Article 9 provides that "all questions as to the purchasing of land, the character and style of building to be erected thereupon, as to how and to whom and at what rent the several apartments shall be leased, and as to the apportioning and distributing of the said apartments among the stockholders shall be decided by the vote of the majority of the stock, and not otherwise." Authority to decide these questions, which were vital to the success and prosperity of the common enterprise, must necessarily rest somewhere, and the statute authorized the corporation to settle that for itself through the operation of its by-laws, and these conferred the authority not upon the trustees, but upon the majority of the stockholders. Notwithstanding that fact, the board of trustees took it upon themselves to adopt the prospectus which had previously been issued. That contemplated an outlay of five hundred and eighty thousand dollars, one-half of which was to be obtained by mortgage of the property, and the other half by sales of stock. The prospectus dealt wholly in estimates, and these, as is generally the fact, were hopeful and flattering much beyond the realized truth. A subscription for seventy shares, costing thirty-five hundred dollars, it was asserted, would entitle the subscriber to certain apartments on any of the floors without additional rent. But all this was estimate merely, and whoever bought the stock must necessarily take it subject to the authorized control and the emergencies which the actual construction should develop. One of the subscribers was Cruikshank, who acted for Van Brunt, and to the latter, in virtue of his seventy shares, was assigned

the apartment in controversy, now numbered 21, and whose rights afterwards passed to the plaintiff.

But before the latter purchased, great changes in the plan were adopted, which at once made the results outlined by the prospectus utterly impossible. These changes made the building thoroughly, instead of partially, fire-proof, added an additional story, and almost exactly doubled the contemplated expenditure. The plaintiff was present at the stockholders' meeting at which the changes were made, "representing his wife," and favored them all. The by-laws were read at that meeting and in his presence. He, therefore, perfectly understood the situation and knew before he purchased the seventy shares of Van Brunt that the estimates of the prospectus had become illusory by reason of the added expenditure. Nevertheless, he bought the stock and went into possession of the apartments assigned. But he took that possession subject to the action of the majority of the stockholders as provided by the by-laws.

At a stockholders' meeting held in January, 1884, which was after plaintiff's purchase of Van Brunt, but before the transfer of the stock to him upon the books of the corporation, it was unanimously determined, in view of the increased cost of the structure and the added burden of the mortgage debt, to increase the capital stock to five hundred thousand dollars and to charge to the stockholders as rent for their apartments ten per cent upon the par of their stock. The increased capital was distributed *pro rata* without additional cost to the stockholders and the plaintiff, when he took his stock certificate, received the sixty-seven new shares and became and remains the owner of one hundred and thirty-seven instead of seventy shares. He rented the apartment assigned to him for eight hundred and fifty dollars, thus receiving as interest upon his original investment about twenty-four per cent, and utterly refused to pay the rent or accept a lease as tendered. When his tenant vacated the apartment, the corporation resumed possession of it and excluded him from it after having many times demanded the rent and been refused.

I agree with the trial judge that the plaintiff had no legal title to his apartment, but an equitable right to it upon the reasonable conditions imposed by the majority of the stockholders under the authority of the by-laws. By rejecting those conditions, he lost his right to the apartment assigned, and has no title to it upon which he can recover the possession. The original prospectus was not an element of a completed contract, but a tentative plan, subject by the very law of the corporate organization to such material modifications as the necessities of the enterprise should, require and a majority of the associates direct. It is shown that the certificate of stock is only such, and has no connection with any specific apartment. It simply confers upon the holder the rights of a. stockholder and those rights are subordinate to the law of the corporate organization. This view was that adopted by the courts below and it seems to us correct.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.